```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TAMMY M. KENNEDY

                         Plaintiff,        06-CV-6349

             v.                            DECISION
                                           and ORDER
MICHAEL J. ASTRUE¹, Commissioner
of Social Security

                         Defendant.
_____
```

## INTRODUCTION

Plaintiff Tammy M. Kennedy ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") payments. Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Clay G. Guthridge denying her application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on grounds that the Commissioner's

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25 (d) (1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

decision was erroneous. For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable law. I therefore grant the Commissioner's motion for judgment on the pleadings, and deny plaintiff's cross-motion for judgement on the pleadings.

## BACKGROUND

On November 12, 2003, Plaintiff, at that time 38 years-old, filed applications for SSI Benefits Title II, § 216(I) and § 223(d) of the Social Security Act claiming an inability to work since March 26, 2002, due to lumbar degenerative disc disease. Plaintiff's application was denied by the Social Security Administration ("the Administration") initially on January 22, 2004. Claimant filed a timely written request for a hearing on July 13, 2006.

Thereafter, on January 19, 2006, Plaintiff appeared with counsel in Rochester, New York, before the ALJ who presided from Dover, Delaware via teleconference. In a decision dated March 30, 2006, the ALJ determined that Plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on June 22, 2006. On July 13, 2006, the Plaintiff filed this action.

**DISCUSSION**

I.  **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc.,842 F.2d 639 (2d Cir. 1988).  If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.  **The Commissioner's decision to deny the Plaintiff benefits is supported by substantial evidence in the record.**

### A.  **The ALJ's decision.**

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis in determining disability benefits.  See 20 C.F.R. § 404.1520. Step One: the ALJ first considers whether claimant is currently engaged in substantial gainful activity.  Step Two:  If the claimant is not engaged in such activity, the ALJ considers whether the claimant has a severe impairment or impairments which significantly limit his physical or mental ability to do basic work activities. Step Three: If the claimant suffers from an impairment that is listed in the Appendix 1 of Subpart P of the Social Security Regulations, the claimant will be considered disabled without considering other factors. Step Four: If the claimant does

not have an impairment listed in Appendix 1, the ALJ must then determine whether or not the claimant, despite his impairments, retains the residual functional capacity to perform his past work. Step Five: If the ALJ determines that the claimant is unable to perform his past work, the ALJ must then determine whether or not the claimant can perform other work in the local or national economy.

Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since her alleged disability onset date. (Transcript of Administrative Proceedings at page 16) (hereinafter "T."). At Steps 2 and 3, the ALJ concluded that Plaintiff's impairment of lumbar degenerative disc disease, is not an impairment that is "severe" within the meaning of the Regulations and is not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Social Security Regulations. (T. at 17-18).

At Step 4, the ALJ determined that Plaintiff did not retain the residual functional capacity to perform her past relevant work. (T. at 19). For Step 5, the ALJ gave the Plaintiff the maximum benefit of the doubt and concluded that Plaintiff retained the residual functional capacity to perform the exertional requirements of sedentary work. (T. at 18). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. (T. at 18-

19).  Accordingly, the ALJ limited Plaintiff's physical requirements, stating that Plaintiff can never climb ladders, ropes or scaffolds and may only occasionally climb ramps and stairs. (T. at 19).  Thus, the ALJ found that Plaintiff could perform such jobs as an inspector/checker, and a charge account clerk, and that such jobs exist in the national and local economies. (T. at 20).

### B. The ALJ properly evaluated the medical opinions in the record.

The ALJ properly relied upon substantial objective medical evidence as well as Plaintiff's subjective complaints, in weighing the opinions of Plaintiff's physicians.  The ALJ primarily relied upon the opinions of Plaintiff's treating physicians Drs. Everett and Cole, consulting physician Dr. DellaPorta, and afforded little weight to the opinion of Plaintiff's other treating physician, Dr. Steele.

The Social Security regulations require that a treating physician's opinion will be controlling if it is, "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  The ALJ gave little weight to Dr. Steele's opinion because that opinion was inconsistent with Dr. Steele's own clinical findings, and was inconsistent with the substantial evidence contained in the record. (T. at 18).

Dr. Steele examined Plaintiff on June 21, 2000. (T. at 218). Plaintiff was complaining of a sharp, constant non-radiating pain down the right side of her back which increased with movement and decreased with rest.  Plaintiff also stated that she experienced occasional difficulty walking. During Dr. Steele's examination, he noted that Plaintiff had no sensory or focal deficits, that Plaintiff was able to stand on her tip toes and heels, leg raises were full on the left and limited to sixty degrees on the right, with no buttock or sciatic tenderness.  Dr. Steele advised Plaintiff to rest, stretch, and to apply heat to her back. Plaintiff was also started on a trial of Celebrex.  On October 3, 2000, Plaintiff had a follow-up visit with Dr. Steele. (T. at 217). Plaintiff reported pain through her buttocks, and a slight numbness and tingling sensation through the distal lower extremity laterally.  During this visit, Dr. Steele did find that Plaintiff was able to stand on her tiptoes and heels without difficulty.  He also found that Plaintiff's straight leg raises were negative. However, Dr. Steele found that there was positive right-sided paravertebral muscle and buttock tenderness.  Dr. Steele concluded that Plaintiff had low back pain with radicular symptoms but had no other significant findings.

Treating orthopedic surgeon Dr. Everett, treated Plaintiff between February 2001 and October 2001. (T. at 248-259).  During this time Dr. Everett noted that there was no change in Plaintiff's

condition from her initial evaluation. Therefore, Dr. Everett referred Plaintiff for an MRI to determine the source of Plaintiff's back pain. Before the MRI was taken, Dr. Everett stated that if the MRI was normal, then the source of Plaintiff's back pain would be primarily in the muscular realm, and that "a return to work would be probable." (T. at 253). On October 1, 2001, Dr. Everett reviewed the results of Plaintiff's September 19, 2001 MRI. (T. at 248-250). The MRI showed that Plaintiff had degenerative changes at L3-L4 and L4-L5, with no signs of neural encroachment, stenosis, disc herniation or fracture. An ovarian cyst was seen, which Dr. Everett suggested could be the source of Plaintiff's back pain. Dr. Everett concluded that Plaintiff's MRI was "essentially normal," and revealed no evidence of lumbar radiculopathy. Dr. Everett advised Plaintiff to remain as active as possible and told her that she could return to work "with lifting restrictions of 40 pounds and no repetitive bending or lifting over the next 2 months." (T. at 248). Dr. Everett also informed Plaintiff that after two months she could return to work with no restrictions.

Dr. Cole performed an independent examination of the Plaintiff on October 23, 2001. (T. at 404-406). Plaintiff told Dr. Cole that she had hit her back against a shelf on June 20, 2000 when she was putting away stock at work in a freezer. Based on his examination, Dr. Cole concluded that Plaintiff was unable to return to her

previous job but retained the ability to lift 10 pounds. Further, Dr. Cole said that Plaintiff should not engage in repetitive motions with her back and that Plaintiff is unable to kneel, squat, climb or be in awkward positions.

Dr. DellaPorta performed an independent workers' compensation examination on Plaintiff on July 3, 2002. (T. at 192-194). He reviewed Plaintiff's treatment to date from Drs. Steele, Everett, and Cole. During his examination, Dr. DellaPorta questioned Plaintiff's full effort on testing her back range of motion, since Plaintiff demonstrated "significantly better back flexion when not being formally tested." (T. at 193). Plaintiff's straight leg raises were to seventy degrees on the right and to eighty degrees on the left. Plaintiff had decreased bilateral shoulder range of motion due to back pain. Dr. DellaPorta concluded that Plaintiff had a moderate partial disability of lower back pain due to injury from June 20, 2000. (T. at 194). It was his opinion that Plaintiff should avoid a job that requires repetitive bending or twisting of her back or lifting more than 30 pounds, and should not perform any heavy pushing or pulling.

Plaintiff continued to see Dr. Steele after Dr. DellaPorta's assessment. Dr. Steele recommended to Plaintiff on a number of occasions to lose weight, exercise, and to reduce her Vicodin intake. (T. at 189, 190, 187, 185, 184). During her visit with Dr. Steele on October 27, 2003, Plaintiff primarily complained of

pain associated with an ovarian cyst. (T. at 182-183).[2]  Plaintiff eventually underwent a total abdominal hysterectomy and bilateral alpingoophorectomy on March 15, 2005. (T. at 269-273).

Dr. Steele completed a check-off form prepared by Plaintiff's counsel on April 29, 2005, in which he stated that Plaintiff could never climb, balance, stoop, crouch, kneel, crawl, reach, push or pull. (T. at 392-393).  Dr. Steele noted that Plaintiff could occasionally climb stairs for 2 to 3 hours per day, and is able to stand, walk and sit continuously for one hour each.  Dr. Steele opined that Plaintiff could stand and walk for a total of 3 hours in an 8 hour day and could sit for a total of 4 hours in an 8 hour day.  Dr. Steele concluded that Plaintiff was only able to lift/carry less than ten pounds at one time and had to alternate between standing and sitting.

### C. **The ALJ properly evaluated Plaintiff's subjective complaints.**

The ALJ stated that while the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms... claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (T. at 18).  The ALJ did properly consider the opinions of Plantiff's treating physicians and gave Plaintiff the

---

[2]Due to the ovarian cyst which was seen during the September 2001 MRI, Plaintiff went for a pelvic ultrasound on October 18,2001. (T. at 400-401). The ultrasound revealed that Plaintiff had a right ovarian lesion most consistent with a dermoid and a mid uterine polyp versus a submuscosal myoma.

maximum benefit of the doubt. As a result, the ALJ found that the Plaintiff's residual functional capacity was at a sedentary work level. Therefore, the ALJ correctly found that the Plaintiff was not disabled since Plaintiff retained the functional capacity to perform many tasks, including tasks outside Plaintiff's recommended work level.

For Plaintiff to be entitled to disability benefits, she must have a medically determinable impairment that is expected to result in death or last for a continuous period of time greater than twelve months, limiting her functional ability to do her past relevant work or other work that exists in the national economy. See 42 U.S.C. §§ 423(d) and 1382c(a)(3). The ALJ found that Plaintiff's impairment was not severe enough to render a finding of disabled. (T. at 16-17). The ALJ properly evaluated the medical opinions of both treating and non-treating physicians in determining Plaintiff's residual functional capacity. The ALJ even rejected one of the potential jobs that the Vocational Expert suggested since the ALJ found that it potentially involved more physical exertion than the Plaintiff could handle. (T. at 19).

I find that the ALJ correctly considered all of Plaintiff's physical as well as mental limitations in assessing her residual functional capacity. The ALJ's conclusion that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record.

## **CONCLUSION**

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca<br>
MICHAEL A. TELESCA<br>
United States District Judge

Dated:   Rochester, New York
         July 11, 2008